UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE K. CLARK,

    Petitioner,

v.

SHAWN BREWER,

    Respondent.

Case No. 2:16-cv-13485

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS [1] AND DENYING CERTIFICATE OF APPEALABILITY**

Through counsel, Petitioner Kyle Clark filed a petition for writ of habeas corpus. He challenges his convictions for third-degree criminal sexual conduct and domestic violence on three grounds: (1) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963); (2) his right to counsel was violated during a competency hearing; and (3) ineffective assistance of defense counsel. Respondent argues that Clark's claims are meritless. The Court will deny Clark's petition and will deny him a certificate of appealability.

**BACKGROUND**

Clark's convictions arose from an assault of victim, H.M., in their home in Saline, Michigan. The Michigan Court of Appeals extensively reviewed the circumstances leading to Clark's conviction. *See People v. Clark*, No. 313121, 2014 WL 2795855, at *1–2 (Mich. Ct. App. June 19, 2014), *rev'd in part*, *People v. Clark*, 498 Mich. 858 (2015). Specifically, Clark and H.M. lived together for a number of years, the two argued, and then H.M. attempted to end the relationship. At that point, Clark pushed H.M. upstairs to the bedroom, choked her, and anally raped her.

1

A jury in Washtenaw County Circuit Court convicted Clark of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(b),[1] and domestic violence, Mich. Comp. Laws § 750.81(2). On October 3, 2012, Clark was sentenced to 10 to 15 years for third-degree criminal sexual conduct conviction and 93 days for the domestic violence conviction.

Clark appealed his conviction challenging the scoring of his sentence. The Michigan Court of Appeals affirmed Clark's conviction and sentence. *People v. Clark*, No. 313121, 2014 WL 2795855 (Mich. Ct. App. June 19, 2014), *rev'd in part*, *People v. Clark*, 498 Mich. 858 (2015). Clark sought leave to appeal in the Michigan Supreme Court, but the Michigan Supreme Court vacated the sentence and remanded the case to the trial court for resentencing based on the scoring of his sentence. *People v. Clark*, 498 Mich. 858 (2015). The Michigan Supreme Court denied leave to appeal in all other respects. *Id.*

The trial resentenced Clark on January 29, 2016. He received 10 to 15 years' imprisonment for the third-degree criminal sexual conduct conviction. He filed an appeal in the Michigan Court of Appeals, which affirmed the sentence. *People v. Clark*, No. 332216, 2017 WL 2882546 (Mich. Ct. App. July 6, 2017). Clark did not seek leave to appeal in the Michigan Supreme Court.

Clark then filed his petition for a writ of habeas corpus raising three claims: (1) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963); (2) his right to counsel was violated during a competency hearing; and (3) ineffective assistance of defense counsel.

---

[1] The Michigan Court of Appeals cited Mich. Comp. Laws § 750.520b(1)(b) (use of force), but that provision is not applicable to the facts of Petitioner's case. The use of force section is Mich. Comp. Laws § 750.250b(1)(f).

2

## STANDARD OF REVIEW

The Court reviews the case under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established law if: (1) it "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or (2) it "confronts" a set of materially indistinguishable facts from those of a decision of the Supreme Court but "nevertheless arrives at a result different from that precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

A state court's decision is an "unreasonable determination" if it correctly identifies the "governing legal principle" from the Supreme Court, but "unreasonably applies that principle to the facts" of the case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). The decision cannot be merely incorrect or erroneous, but must be "objectively unreasonable." *Id.* at 520–21 (citation omitted); *see also Williams*, 529 U.S. at 409.

If the state court determined that a claim lacks merit, that finding "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

3

court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d) serves as a "guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (internal quotation omitted). A state prisoner must show, therefore, that "the state court's ruling on the claim" was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Federal courts may review only whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court rendered its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011).

State courts' citation to or even awareness of Supreme Court cases is not necessary so long as "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002). Moreover, lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

Finally, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

## DISCUSSION

I. <u>Alleged *Brady* Violation</u>

Clark first claims that the prosecution failed to disclose potentially exculpatory evidence. In particular, the sexual assault nurse examiner took three colposcope images

4

of the victim's genitalia and anus during the post-assault examination. The prosecution did not turn over the images. Clark argues that this failure violated *Brady v. Maryland* and that, in denying the claim, the Michigan Court of Appeals applied the incorrect standard.

The Due Process Clause requires the prosecution to disclose to the defense favorable evidence that is material to a defendant's guilt or punishment. *Brady*, 373 U.S. at 87. For *Brady* purposes, evidence is "material" if, had the evidence been disclosed, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability means "the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S. 73, 75–76 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)); *see also United States v. Augurs*, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

To demonstrate a *Brady* violation, therefore, three elements must be shown: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The petitioner bears the burden of establishing each of these three elements. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

In Clark's case, Pamela Federoff, a sexual assault nurse examiner at St. Joseph Mercy Hospital in Ann Arbor, examined H.M. on the date of the incident. ECF 6-10, PgID 277. Federoff performed a physical examination of H.M. and observed no visible injuries.

*Id.* at 279. Federoff also took three images using a colposcopy machine, which magnifies the genital area to allow detection of injuries invisible to the naked eye. *Id.* at 278. Federoff produced a report that was forwarded to law enforcement, given to her director, and kept as part of the hopsital's medical records. *Id.* at 282. The colposcope images, however, were not included in the report, but were maintained on the computer in the locked sexual-assault nurse-examiner room. *Id.* Federoff also testified that she was qualified to take images with the colposcopy machine, but not qualified to evaluate the images. *Id.* at 281.

During a discussion outside the presence of the jury, the prosecutor stated that neither the Sheriff's Department nor the prosecutor's office received the images. *Id.* at 286. Defense counsel asked to review the images and retain somone to testify about them. *Id.* The trial court denied the request finding no indication that the images presented any evidentiary value. *Id.*

The Michigan Court of Appeals denied Clark's appeal on the claim under *Brady* because there was no evidence that the prosecutor or law enforcement possessed the images, and, regardless, the evidence was not material because the evidence the images may present was merely speculation. *Clark*, 2014 WL 2795855, at *2.

Clark's showing fails to show the three elements of a *Brady* violation. First, there is no evidence that the images were favorable to Clark's case. At most, it can be said that the images contained *potentially* exculpatory evidence. "Mere speculation" about the exculpatory value of images is insufficient to establish the materiality or exculpatory nature of the images. *See Wood v. Bartholomew*, 516 U.S. 1, 6 (1996); *Thorne v. Timmerman-Cooper*, 473 F. App'x 457, 466–67 (6th Cir. 2012). Moreover, there is no evidence that the State willfully or inadvertently suppressed the images. Clark, therefore,

fails to show that the state court's decision was contrary to or an unreasonable application of *Brady*. Nor has Clark shown that the state court applied an incorrect standard by evaluating the claim under *Brady*.

Finally, the trial court did not err in denying a continuance or adjournment in the case. Trial courts possess broad discretion in granting or denying such a motion. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (recognizing that trial courts have "broad discretion" in matters related to continuances). When a habeas petitioner challenges the denial of a request for continuance, the Court must find both an abuse of discretion and that the decision was "so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774–75 (6th Cir, 1986). The trial court neither violated Clark's constitutional rights nor abused its discretion by denying the motion for a continuation because the evidentiary value of the images was based merely on speculation.

II. <u>Right to Counsel Claim</u>

Clark's second claim relates to his attorney's absence during a competency hearing. The Sixth Amendment guarantees a right to the assistance of counsel in all criminal prosecutions and by its "plain wording" encompasses "counsel's assistance whenever necessary to assure meaningful 'defence.'" *United States v. Wade*, 388 U.S. 218, 225 (1967). The right to counsel extends to all critical stages of a judicial proceeding. *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). A competency hearing is a "critical stage." *United States v. Amir*, 644 F. App'x 398, 400 (6th Cir. 2016).

A criminal defendant may waive the right to counsel so long as the waiver is "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). The waiver

must be "done with sufficient awareness of the relevant circumstances." *Id.* at 81 (quotation omitted). The petitioner carries the burden of proving that he "did not competently and intelligently waive" his right to the assistance of counsel. *Id.* at 92.

Here, Clark both consulted with his attorneys—albeit not in person—and subsequently waived his right to counsel during the competency hearing. Prior to trial, the trial court referred Clark for a competency evaluation. The Center for Forensic Psychiatry found Clark competent to stand trial. ECF 6-17, PgID 516–20. Clark's counsel failed to appear at a hearing to determine Clark's competence because of a "mix-up in [counsel's] office." ECF 6-8, PgID 209. The trial court indicated that defense counsel made no objection to the competency report, stipulated to Clark's competency, and agreed that the trial should proceed as scheduled. *Id.* at 209–10. The prosecutor initially objected to Clark proceeding without counsel during the hearing.

Clark responded that he reviewed the competency report with both of his attorneys, spoke with them at length about it, and wished to proceed to trial as scheduled. *Id.* at 210–11. Clark specifically requested no further delays. *Id.* at 211. The prosecutor withdrew his objection, the trial court accepted Clark's representation and the stipulation as to Clark's competency, and then the trial court directed the trial to proceed as scheduled. *Id.* at 211–12.

On direct appeal, the Michigan Court of Appeals denied Clark's claim finding that Clark had the benefit of counsel, consulted his attorneys at length about the report, and indicated a willingness to proceed without counsel's presence. *Clark*, 2014 WL 2795855, at *4.

The Michigan courts' decisions were neither contrary to clearly established federal law nor unreasonably applied federal law. Clark's own testimony demonstrates that he consulted with his attorneys about the competency report. He then clearly and cogently indicated his desire to proceed to trial. Separately, Clark's attorney indicated that he consulted with Clark and they agreed not to contest the competency determination. Counsel was not "prevented from assisting [Clark] during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. Furthermore, Clark validly waived his right to have counsel at the hearing. His testimony evinces "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quotation omitted).

III.     Ineffective Assistance of Counsel Claim

Finally, Clark seeks habeas corpus relief on the ground that his attorney provided ineffective assistance. In particular, Clark identifies his attorney's failure to ask that Detective Thomas Sinks's videotaped interview of Clark be played for the jury and his failure to move to exclude to allegedly biased jurors.

*Strickland v. Washington* provides the "clearly established law" for evaluating ineffective assistance of counsel claims under the AEDPA. *See Williams v. Taylor*, 529 U.S. 362, 390–91 (2000). The two-pronged *Strickland* test requires a showing of deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance was deficient, a petitioner must establish that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. The deficiency prong "requires a showing that counsel made

errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

A federal court may grant habeas relief only if the state-court decision unreasonably applied the *Strickland* standard for evaluating ineffective-assistance-of-counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111, 122–23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* at 123 (internal quotation omitted). Federal courts, therefore, apply a "doubly deferential" review of state court decisions. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Clark first argues that counsel was ineffective for failing to move to play Detective Sinks's videotaped interrogation of Clark. Detective Sinks testified that, during the interview, Clark acknowledged having anal sex with H.M., but the detective's police report noted only vaginal and oral sex. In response to a defense question on the discrepancy, Detective Sinks stated that his report was a brief summary and he would defer to the recording of the interrogation for "100% accuracy." *Clark,* 2014 WL 2795855, at *5. Neither side moved for the jury to hear the recording. On direct appeal, the Michigan Court of Appeals granted Clark's request to expand the record to include the unplayed interview recording. *Id.* The Michigan Court of Appeals reviewed the recording and found that Clark admitted to having sex the morning of the incident; specifically, when asked by police whether Clark and H.M. had "traditional sex, vaginal sex or –", Clark cut off the officer answered "yeah, everything." *Id.* When asked directly whether Clark and H.M. ever had anal sex, Clark responded "yes, we had." *Id.* When the officers pressed further and

asked when the last time Clark and H.M. had anal sex, Clark asked whether he needed an attorney and whether H.M. accused him of rape. *Id.*

The Michigan Court if Appeals reasonably applied *Strickland*. The state court observed that Clark did not deny anal intercourse and the jury could reasonably have concluded that "everything" included anal intercourse. Moreover, the state court found that trial counsel may have been concerned about Clark's ambiguous statements and the possibility that Clark's request for an attorney or question about rape accusations could impute guilt. *Id.* at *6. The state court further found that defense counsel challenged the credibility of the officer and that the recording did not refute unequivocally the officer's testimony. *Id.* As the Michigan Court of Appeals correctly found, defense counsel's conduct was well within the bounds of professional competence.

Second, Clark argues that defense counsel was ineffective for failing to move to excuse for cause "Juror S" and "Juror H." He argues that counsel should have moved to exclude Juror S because she lived across the street from Detective Sinks and to exclude Juror H, a doctor, because the daughter of a prosecution witness was her patient. The Michigan Court of Appeals found no ineffective assistance of counsel because counsel could have reasonably determined that each of these jurors would approach the trial with an open mind and decide the case based upon the evidence presented. *Clark*, 2014 WL 2795855, at *6. The state court relied upon Juror S's testimony that her relationship with Detective Sinks would not impact her ability to be fair and impartial and Juror H's testimony that she would not be comfortable if her patient were involved with the trial, but there was no indication of her patient's involvement. *Id.*

The selection of jurors is a matter of trial strategy, and courts rarely second-guess those decisions. *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001). The record presents no evidence that counsel lacked strategic reasons for declining to excuse Jurors S and H. Moreover, to succeed on his claim that counsel was ineffective based on failure to exclude jurors, Clark must show that a juror was *actually* biased against him. *See Hughes v. United States*, 238 F.3d 453, 458 (6th Cir. 2001). Petitioner has not met the burden. Accordingly, the Court finds that the state court reasonably applied *Strickland*.

IV.  Certificate of Appealability

To appeal the Court's decision, Clark must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, Clark must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). Here, jurists of reason could not debate the Court's denial of Clark's claims. The Court denies a certificate of appealability.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Petitioner's petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER OREDRED** that the Court **DENIES** Petitioner a certificate of appealability.

**SO ORDERED.**

                                              s/ Stephen J. Murphy, III
                                              STEPHEN J. MURPHY, III
                                              United States District Judge

Dated: May 8, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 8, 2018, by electronic and/or ordinary mail.

                                              s/ David Parker
                                              Case Manager